UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | |
|---|---|
| STEPHEN LOTT and JEREMIAH JOHNSTON, On Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>V.<br><br>BUCCANEER SATELLITE INC., CANDY H. TYRE and DIRECTV, INC.<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§     CIVIL ACTION NO. 9:11-cv-00173-RC<br><br>    JURY TRIAL DEMANDED |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND/OR MOTION TO COMPEL ARBITRATION**

Stephen Lott and Jeremiah Johnson, on behalf of themselves and on behalf of all others similarly situated ("Plaintiffs") file this Response in Opposition to Defendants' Motion to Dismiss and/or Motion to Compel Arbitration, and respectfully state as follows:

**I.     Introduction and summary of argument.**

Defendants Buccaneer Satellite Inc., Candy H. Tyre and DirecTV, Inc. misclassify their employees as independent contractors as part of a plan to deprive them out of their overtime and minimum wage rights under the Fair Labor Standards Act. This is a common industry practice despite repeated rulings across the country clearly holding that cable and satellite television installers are employees under the economic realities test. Plaintiffs Lott and Johnson seek damages under the Fair Labor Standards Act for themselves and similarly situated employees for (1) minimum wage and overtime

compensation for the last three years, (2) an equal amount as liquidated damages, and (3) attorney's fees and court costs.

Defendant forced Lott and Johnson to sign a document inaptly titled "independent contractor agreement" that imposes draconian terms on them that strip them of their substantive rights under the FLSA. The court should deny Defendants' request for each of the following independent reason:

(1) The arbitration clause is unconscionable because it limits Plaintiffs' substantive rights to pursue their minimum wage and overtime claim for the statutory three-period by imposing a contractual 180-day limitations period, thereby rendering the agreement invalid.

(2) The arbitration clause is unconscionable because it waives Plaintiffs' substantive right to overtime pay under the FLSA by adopting Florida state law, which lacks an overtime pay requirement, as the sole substantive law applicable to their claims, thereby rendering the agreement invalid.

(3) The arbitration clause is unconscionable because it modifies the substantive law under the FLSA which allows only the employee to recover attorney's fees and expert witness fees in the event he prevails. This arbitration clause creates a new right for the employer to recover attorney's fees and expert fees, which will be used has a hammer to intimidate employees from exercising their rights.

(4) The arbitration clause is unconscionable because it requires Lott and Johnson to pay for at least half of the arbitration costs and to participate in an arbitration proceeding in Pinellas County, FL even though they reside and worked for Buccaneer in Texas.

(5) The arbitration clause was based on illusory consideration because it was not accepted by Buccaneer, which deprives Lott and Johnson of their right to compel Buccaneer to arbitrate disputes. Unilateral obligations to arbitrate disputes are unenforceable.

If the court does find the arbitration clause enforceable, it should only be held to be enforceable as to Lott and Johnson's claims against Buccaneer, not against Defendants Candy H. Tyre and DirecTV, Inc. These two defendants are not parties to the agreement and plaintiffs never agreed to arbitrate their claims against them.

In addition, if the court does find the arbitration clause enforceable, the court should compel arbitration to take place in Houston, Texas and should specifically allow in its order for the arbitration to proceed as a class action for all workers/contractors who signed the arbitration agreement. The court should also issue an order rendering many of the clauses unenforceable as stated in the proposed order.

**II.     Argument and authority supporting denial of arbitration.**

The party seeking to compel arbitration has the burden to establish that an arbitration agreement exists. *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex. 1999); *Wachovia Sec., L.L.C. v. Emery*, 186 S.W.3d 107, 113 (Tex. App.—Houston [1st Dist.] 2005, org. proceeding). This requires a showing that the agreement containing the arbitration clause "meets the requirements of general contract law." *See In re Advanced PCS Health L.P.*, 172 S.W.3d 603, 606 (Tex. 2005); *UBS Fin. Serv., Inc. v. Branton*, 241 S.W.3d 179, 184 (Tex. App.—Fort Worth 2007, no pet.). Submission of an authenticated copy of the agreement is necessary. *In re H.E. Butt Grocery Co.*, 17 S.W.3d 360, 367 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding.) Next, the party seeking arbitration must establish that the claims in the dispute fall within the scope of the arbitration clause. *In re Autotainment Partners*, 183 S.W.3d 532, 534 (Tex. App.—Houston [14th Dist.] 2006, orig. proceeding).

In ruling upon a motion to compel arbitration, courts first determine whether the parties agreed to arbitrate the particular type of dispute at issue. *JP Morgan Chase & Co. v. Conegie ex rel. Lee*, 492 F.3d 596, 598 (5th Cir. 2007). Answering this question requires considering two issues: (1) whether there is a valid agreement to arbitrate

between the parties, and (2) whether the dispute in question falls within the scope of that arbitration agreement. *Id.*

In this case, there is no need to address the second issue because there is no valid agreement to arbitrate. The Federal Arbitration Act reflects a "liberal federal policy favoring arbitration." *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669, 2012 WL 43514, at *3 (Jan. 10, 2012) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). However, the "federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008). It is well established that an agreement to arbitrate is a matter of contract. *Carey v. 24 Hour Fitness, USA, Inc.*, No. 10-20845, 2012 WL 205851, at *2 (5th Cir. Jan. 25, 2012). Thus, to determine whether an agreement to arbitrate exists, is a matter of contract. *Id.* Courts apply ordinary state-law principles that govern the formation of contracts. *Morrison*, 517 F.3d at 254.

In this case, the arbitration agreement fails as a matter of contract for the following reasons: (1) the agreement is unconscionable; (2) the agreement was based on illusory consideration; and (3) two of the Defendants who moved to compel arbitration are not even parties to the agreement.

### 1. The arbitration clause is unconscionable because it reduces the FLSA three-year SOL to a 180-day SOL.

FLSA rights cannot be waived under any circumstance. On this issue, the U.S. Supreme Court has ruled, "This Court's decisions interpreting the FLSA have frequently emphasized the nonwaivable nature of an individual employee's right to a minimum wage and to overtime pay under the Act. Thus, we have held that FLSA rights cannot be

abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." *Barrentine v. Arkansas-Best Freight Sys., Inc.,* 450 U.S. 728, 740 (1981). Moreover, the "principal congressional purpose in enacting the [FLSA] was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Id.* at 739. Indeed, the FLSA's provisions "are remedial and humanitarian in purpose. We are not here dealing with mere chattels or articles of trade but with the rights of those who toil, of those who sacrifice a full measure of their freedom and talents to the use and profit of others. Those are the rights that Congress has specially legislated to protect. Such a statute must not be interpreted or applied in a narrow, grudging manner." *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944).

Defendant conveniently omits the most critical portions of arbitration clause from its brief and in particular the following section:

> shall be borne by the party that does not prevail in such arbitration. The parties further agree that arbitration proceedings must be instituted within 180 days after an allegedly aggrieved party to this agreement has actual knowledge of such claim or controversy, and that the failure to institute arbitration proceedings within such time period shall constitute an absolute bar to the institution of any proceedings and a waiver of all claims. The

*See* Def.'s Motion, Ex. 1, p. 3.

Lott worked as an employee for Buccaneer from October 17, 2010 to May 27, 2011. Lott filed his federal Complaint on October 17, 2011. Under the arbitration clause, Lott at most could pursue his claim from approximately April 17, 2011 until May 27, 2011, which amounts to approximately five weeks. Under the FLSA, he would be able to pursue a claim for the entire period her worked for Defendant. Such a contractual

5

waiver is illegal per se, rendering the arbitration agreement invalid. *See Allen v. Atl. Richfield Co.*, 724 F.2d 1131, 1135 (5th Cir. 1984) ("[A]n agreement for an employee to work [overtime hours] at a non-overtime rate or to work at less than the minimum wage would not be enforceable, since an employee's right to a minimum wage per hour or overtime pay for hours over forty hours a week is not subject to waiver by the employee.").

### 2. The arbitration clause is unconscionable because it waives Plaintiffs' right to overtime pay under the FLSA.

The arbitration likewise provides that, "The parties further agree that the substantive, evidentiary and procedure laws of the state of Florida shall be applied in such proceedings." *See* Def.'s Motion, Ex. 1, p. 3. Florida does not have an independent overtime law. By forcing plaintiffs to arbitrate this dispute regarding *overtime* wages under this agreement, Defendant is asking the court to issue an effective summary judgment because the law contractually selected does not allow for overtime pay *ab initio*. As stated above, employees cannot waive their rights to overtime required to be paid under the FLSA. *See Barrentine v. Arkansas-Best Freight Sys., Inc.,* 450 U.S. 728, 740 (1981). Accordingly, the arbitration clause contains unconscionable and invalid terms.

### 3. The arbitration clause is unconscionable because modifies the substantive law under the FLSA by creating a new threat of having to pay the employer's fees if the employee does not prevail.

The FLSA affords the employee the unilateral right to recovery fees and court costs in the event he prevails on his claim. This fee shifting provision was intended to encourage employees to exercise their rights by allowing them to make a claim even if they lack the resources to access the courts. Likewise, Congress intentionally did not

6

make the fee-shifting component of the law bilateral because doing so deters employees from exercising their rights due to fear of having to pay their employer's fees in the event they do not prevail. *Silva v. Miller*, 547 F. Supp. 2d 1299, 1304 (S.D. Fla. 2008) aff'd, 307 Fed. Appx. 349 (11th Cir. 2009) ("Congress encourages the filing of meritorious FLSA claims by providing for the recovery of reasonable attorney's fees.")

The arbitration clause in question turns this legal paradigm on its head. The agreement explicitly requires the employee to pay the employer for not just all attorneys' fees, but also all expert witness' fees and the arbitrator's fees in the event they do not prevail on their claim. The mere threat of having to pay tens of thousands of dollars imposes a real deterrence to even exercising their rights. As such, the arbitration clause is unconscionable on its face.

    **4. The arbitration clause is unconscionable because the costs of the arbitration proceeding are significantly greater than the costs the Plaintiffs would incur in federal court, and it requires Lott and Johnson to participate in an arbitration proceeding in Pinellas County, FL even though they reside and worked for Buccaneer in Texas.**

An arbitration clause is unenforceable when it imposes substantial costs on one of the parties to the agreement. *See, e.g., Green Tree Fin. Corp. v. Randolph*, 121 S.Ct. 513, 522, 531 U.S. 79, 91 (2000). Specifically, the United States Supreme Court recognized that "the existence of large arbitration costs could preclude a litigant … from vindicating federal statutory rights." *Id*.

In this case, the arbitration agreement mandates that the arbitration proceeding be conducted through the American Arbitration Association ("AAA"). (See Ex. 1, Def.'s Motion at p. 5.) Under AAA rules, absent a statement in the arbitration clause regarding who pays for such fees upfront, both parties are required to pay the arbitrator's fees and

7

related costs equally. Such an agreement is unconscionable because it imposes substantial costs on the Plaintiffs relative to the Defendants.

Under the FLSA, a successful claimant has the statutory right to receive all costs of court and attorney's fees from the employer. *See* 29 U.S.C. § 216(b). The agreement Defendants now wish to enforce, strip the Plaintiffs of their substantive rights by requiring them to pay the substantial costs of the arbitration, despite having meritorious claims.

Attached hereto as Exhibit 2 is the fee schedule for employment disputes before the American Arbitration Association. (*See* Exhibit 2). The initial filing fee for the Plaintiffs is estimated at $8,200.00 – significantly greater than the filing fee for a federal complaint. (*Id*. at page 4). An additional "final fee" is owed in the amount $3,250.00. (*Id*.) Additionally, the Plaintiffs have to pay for a rental fee for a room for the final hearing, the expenses of the arbitrator, and the fees for the arbitrator. (*See id*. at page 7). In a recent employment arbitration that Plaintiffs' counsel participated in, the fees for the arbitrator prior to the final hearing were in excess of $18,000.00. Thus, the costs for this arbitration are substantially greater than the costs that would be incurred in litigation. In fact, these costs are weighed heavily against the Plaintiffs. Thus, the agreement is unconscionable as it prevents the Plaintiffs from litigating their statutory rights under the FLSA.

> **5. The arbitration clause was based on illusory consideration because it was not accepted by Buccaneer, which deprives Lott and Johnson of their right to compel Buccaneer to arbitrate disputes. Unilateral obligations to arbitrate disputes are unenforceable.**

Arbitration agreements must be supported by consideration. *In re Palm Harbor Homes,* 195 S.W.3d 672, 676 (Tex. 2006). If the consideration is illusory, the arbitration

8

agreement fails. *See id*. Under Texas law, an arbitration clause is illusory if one party can "avoid its promise to arbitrate by amending the provision or terminating it altogether." *In re 24R, Inc*., 324 S.W.3d 564, 567 (Tex. 2010). In other words, where one party to an arbitration agreement seeks to invoke arbitration to settle a dispute, if the other party can avoid arbitration, then the agreement is illusory from the outset. *See Torres v. S.G.E. Mgmt., LLC*, 397 F. App'x 63, 68 (5th Cir. 2010) (summarizing several Texas and Fifth Circuit opinions noting that the ability to amend the agreement retroactively so as to avoid any promise to arbitrate indicates that the agreement is illusory.).

In this case, the arbitration agreement was never executed by Buccaneer. This is true for both Lott and Johnson's agreements. Hence, if Buccaneer wanted to pursue a claim against Lott or Johnson in federal court, Lott and Johnson could not prevent them from doing so because Buccaneer did not execute the agreement. That is, the agreement is completely one-sided. Buccaneer in essence reserved for itself the power to terminate the arbitration agreement at any time, without notice to the plaintiffs. On the other hand, the Plaintiffs are bound to arbitrate.

Such provisions have been consistently held to invalidate arbitration agreements. Recently, the Fifth Circuit held that an arbitration agreement in an employee handbook was void as illusory because the employee handbook gave 24 Hour Fitness "the right to revise, delete, and add to the employee handbook." *Carey v. 24 Hour Fitness, USA, Inc*., No. 10-20845, 2012 WL 205851, at *5-*6 (5th Cir. Jan. 25, 2012). Likewise, the Fifth Circuit in *Morrison v. Amway Corp*., 517 F.3d 248 (5th Cir. 2008) refused to enforce an arbitration agreement that was capable of being modified. *Id*. at 257. The Fifth Circuit determined that the fact that the distributor agreement stated that it could be "amended

9

and published from time to time in official Amway literature" invalidated the arbitration agreement. *Id.*; *see also Zamora v. Swift Transp. Corp.*, 319 F. App'x 333, 334 (5th Cir. 2009) (affirming that an arbitration agreement was illusory because the employer "reserved the right to revoke or modify the agreements at any time."). Furthermore, in *Weekly Homes, LP v. Rao*, 336 S.W.3d 413 (Tex. App.—Dallas 2011, pet. denied), the employer sought to compel its employee to arbitration. *Id.* at 415. The court held that the agreement to arbitrate was illusory because the employment handbook stated that it was "not to be interpreted as a promise by the Company that any particular situation will be handled in the express manner set forth in the text." *Id.* at 421.

In analyzing this line of cases, the Fifth Circuit recently stated:

> Thus, the fundamental concern driving this line of case law is the unfairness of a situation where two parties enter into an agreement that ostensibly binds them both, but where one party can escape its obligations under the agreement by modifying it.

*Carey v. 24 Hour Fitness, USA, Inc.*, No. 10-20845, 2012 WL 205851, at *6 (5th Cir. Jan. 25, 2012). Here, the facts are even worse. The Defendants do not even have to make any edits to the agreement; they merely need to point to the fact that they did not sign it to avoid arbitration. This means Defendants have the unilateral right to avoid arbitration at any time. This unilateral power means there is no consideration or at best illusory consideration supporting contract formation. Accordingly, no valid, bilateral agreement was formed.

**III. Argument and authority supporting denial of arbitration as to Defendants Candy Tyre and Direct TV. These Defendants are not parties to the proposed contracts.**

If the court finds the agreement enforceable, it is only enforceable as to plaintiffs' claims against Buccaneer; Candy Tyre Individually and Direct TV are not parties to the

agreement. Clearly, Tyre and Direct TV cannot compel Lott and Johnson to arbitrate claims made against them when there is no arbitration clause that applies to them. Moreover, Tyre and Direct TV are legally estopped from taking the position that they somehow had a joint operation with or were joint employers with Buccaneer. In their Answers to Plaintiffs' Complaint, they specifically deny, and are legally estopped from arguing otherwise, that they are joint employers with Buccaneer. (*See* Docs. No. 9 and 10, at pars. 40-59, Defendant's Answers). Defendants likewise denied all of the other factual allegations that they acted as one or otherwise should be treated as a joint employer with Buccaneer. They cannot be heard now to argue that they should receive the benefit of an arbitration agreement that applies to an entity from which they so strenuously have distanced themselves in their pleading.

**IV.     Arguments and authority supporting opt-out collective action proceeding through arbitration.**

If the court does find the arbitration clause enforceable, the court should compel arbitration to take place in Houston, Texas and should specifically require in its order that the arbitration be allowed to proceed as an opt-out collective action, if the requisite proof is established, for all workers/contractors who signed the arbitration agreement.

Under the class arbitration rules of the American Arbitration Association (AAA), an FLSA collective action can proceed as an opt-out class. *Long John Silver's Restaurants, Inc. v. Cole*, 514 F. 3d 345 (4th Cir. 2008). In *Long John Silver*, the Fourth Circuit affirmed an arbitrator's decision to apply the opt-out provisions contained in the AAA's Supplementary Rules for Class Arbitrations to collective claims pursued under section 16(b) of the FLSA. *See id.* at 353-354. In that case, the parties adopted the AAA arbitration rules to adjudicate disputes. *Id.* at 347. The AAA rules allowed for opt-out

11

class actions. *Id.* Therefore, the Fourth Circuit held that the arbitrator appropriately interpreted the parties' adoption of the AAA rules to allow for an opt-out class even for a violation that was based on the Fair Labor Standards Act.

The agreement here does not contain any waiver against class or collective actions, which is sometimes the case. Instead, just like the *Long John Silver* case, the agreement specifically adopts the AAA rules: "Any controversy or claim arising out of or relating to this agreement, . . . shall be settled by arbitration proceedings . . . in accordance with the applicable rules of the American Arbitration Association, . . ." (See Def.'s Motion, Ex. 2 p. 3)

When parties do not waive class action procedures and adopt the AAA rules, arbitrators and courts allow such proceedings to proceed as an "opt out" arbitration because the AAA rules provide for an opt-out, not an opt-in procedure. Following *Long John Silver's*, other AAA and JAMS arbitrators have ordered opt-out procedures in FLSA cases under their class rules.[1] In *Johnson v. Morton's Restaurant Group, Inc.,*[2] the arbitrator found that the parties' arbitration agreements permitted class actions and that AAA's Supplementary Rules for Class Arbitrations governed the action. The arbitrator certified the class and determined that the class should proceed on an opt-out basis because (1) the AAA Supplementary Rules provide opt-out procedures similar to Rules 23 and (2) when an employer seeks relief in federal court to delay arbitration proceedings, which will reduce the number of eligible class members, the employer has

---

[1] *Bowen v. Hovnanian Communications, Inc.*, JAMS, No. 1220038720, p. 2 (Dec. 29, 2008); *Bryant v. Joel Antunes, LLC*, AAA, No. 11 160 01783 05, p. 2 (Sept. 17, 2007) (Partial Final Award of Class Certification); No. 1:04-CV-2550-CC, p.4 (N.D. Ala. July 22, 2008); *Johnson v. Morton's Rest. Group, Inc.*, AAA, No. 11 160 01513 05, p. 19 n.28 (June 27, 2007) (class Determination Award, Partial Final Award).

[2] AAA, No 11 160 01513 05, p. 4 (May 22, 2006) (Clause Construction Award).

agreed to the opt-out procedure.[3] In *Bryant v. Joel Antunes*, LLC,[4] the arbitrator determined that the arbitration agreement was silent on the issue of class actions and therefore did not prohibit class actions. In certifying the class, the arbitrator directed that the AAA Supplementary Rules for Class Arbitrations and its opt-out procedures apply.[5]

Just as important, the recent *D.R. Horton* decision from the National Labor Relations Board affirms that class action/collective action waivers are illegal in employment arbitration agreements. (*See* Exhibit 3 - *D.R. Horton, Inc.*, 357 NLRB No. 184 (Jan 3, 2012).) This court's ruling on this issue is made all the easier by the fact that the arbitration clause in question does not contain any such waivers. Defendant's brief, moreover, is silent on whether the matter should proceed as a collective action via arbitration. Nonetheless, to avoid any ambiguity on the issue before the arbitrator, if this court compels the parties to arbitrate, Plaintiffs' seek a ruling that Plaintiffs shall be allowed to pursue their claims as a collective action.

In *D.R Horton*, an employee sued his employer under the FLSA. (*Id.* at page 1). However, prior to doing so, the employee signed an arbitration agreement. (*Id.*) The arbitration agreement stated that the arbitrator "may hear only Employee's individual claims," and "will not have the authority to consolidate the claims of other employees," and "does not have the authority to fashion a proceeding as a class or collective action." (*Id.*) D.R. Horton required its employees to sign the agreement as a condition of employment. (*Id.*) The National Labor Relations Board held that the arbitration

---

[3] *Johnson*, AAA, No. 11 160 01513 05, p. 19 n. 28 (June 27, 2007) (Class Determination Award, Partial Final Award).
[4] AAA No. 11 160 01783 05, pp. 7-8 (Apr. 21, 2006) (Clause Construction Award).
[5] AAA No. 11 160 01783 05, p. 13 (Sept. 17, 2007) (Partial Final Award of Class Certification); No. 1:04-CV-2550-CC, p. 4 (N.D. Ala. July 22, 2008).

agreement was invalid because it violated section 8(a)(1) of the National Labor Relations Act. (*Id*. at page 13).

Specifically, the NLRB determined that employees have the substantive right "to engage in … concerted activities for the purpose of collective bargaining or other mutual aid or protection." (*Id.* at page 2) (citing 29 U.S.C. § 157). The opinion further states:

> It is well settled that "mutual aid or protection" includes employees' efforts to "improve terms and conditions of employment or otherwise improve their lot as employees through channels outside the immediate employee-employer relationship." *Eastex, Inc. v. NLRB*, 437 U.S. 556, 565-566 (1978). The Supreme Court specifically stated in *Eastex* that Section 7 "protects employees from retaliation by their employer when they seek to improve their working conditions through resort to administrative and judicial forums." *Id*. at 565-566.

(*Id*. at page 4). In *D.R. Horton*, the arbitration agreement prohibited employees from bringing their claims collectively in arbitration or in a judicial forum. (*Id*. at page 13). This violated section 8(a)(1) of the NLRA. (*Id*.) Section 8(a)(1) of the NLRA makes it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in" Section 7. (*Id*. at page 4) (citing 29 U.S.C. §158(a)(1)).

Here, if the court is inclined to compel this matter to arbitration, it should order that the arbitration be allowed to be conducted as a collective action. Following D.R. Horton, other courts considering this matter have either denied arbitration outright due to a class action waiver or specifically allowed the arbitration to proceed as a collection action, opt-out or otherwise. *Herrington v. Waterston Mortgage Corp*., No. Civ. A. 2011-779, 2012 WL 1242318 (W.D. Wis. Mar. 16, 2012); *Owen v. Bristol Care, Inc*., No. Civ. A. 2011-04258, 2012 WL 1192005 (W.D. Mo. Feb. 28, 2012)

Plaintiffs proposed order contains language denying Defendant's Motion to Compel Arbitration and, in the alternative, granting defendant's motion to compel arbitration but ordering that Plaintiffs be allowed to pursue their claim as an opt-out collective action.

V. **Conclusion.**

For these reasons, Plaintiffs ask the Court to deny Defendants' Motion to Dismiss and/or Motion to Compel Arbitration or, in the alternative, grant such motion only as to Defendant Buccaneer and only with the limitations described in the filed proposed order.

Respectfully submitted,

KENNEDY HODGES, LLP

By: /s/ Galvin B. Kennedy
Galvin B. Kennedy
gkennedy@kennedyhodges.com
Texas State Bar No. 00796870
711 W. Alabama St.
Houston, TX 77006
Telephone: (713) 523-0001
Facsimile: (713) 523-1116

ATTORNEY IN CHARGE FOR PLAINTIFFS
& CLASS MEMBERS

**CERTIFICATE OF SERVICE**

I certify that this document was served on all parties via the Eastern District's CM/ECF system on July 20, 2012.

/s/ Galvin B. Kennedy
Galvin B. Kennedy